# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                    **Case No. 8:15-CR-353-T-24AEP**

**EUCLIDES BARRIOS-MARSIGLIA**
_____ /

## SENTENCING MEMORANDUM
## AND REQUEST FOR A REASONABLE SENTENCE OF 72 MONTHS

COMES NOW, the Defendant, EUCLIDES BARRIOS-MARSIGLIA, by and through undersigned counsel and pursuant to U.S.S.G §5K1.1 and 18 U.S.C. §3553(a), and hereby files this Sentencing Memorandum in support of a reasonable sentence of 72 months imprisonment, which would constitute a sufficient but not greater than necessary sentence to accomplish the purposes of sentencing enumerated in 18 U.S.C. §3553(a)(2). As grounds in support thereof, Mr. Barrios-Marsiglia shows as follows:

## FACTUAL AND PROCEDURAL HISTORY

Mr. Barrios-Marsiglia is a Columbian national who was born in Cordoba, Columbia, on April 9, 1969. He and his 3 siblings were raised by their parents, Arrieta and Arnelda, to the best of their ability, notwithstanding their extreme poverty.

Mr. Barrios-Marsiglia was fortunate to be able to attend high school as a teenager but was forced to drop out prior to completion in order to help support his family. Amazingly, he returned to school after an absence of approximately 10 years and completed his high school education at the age of 30. He was then able to attend college and succeeded in obtaining a provisional teaching certificate. Unfortunately, due to financial and political difficulty, he was unable to meet the requirements for his Bachelor's Degree. Instead of teaching, Mr. Barrios-Marsiglia has held a variety of part-time jobs including taxi driver, hospital worker and construction in order to support his ailing common law wife, Nubis Nunez-Navarro, and two daughters, Jessica and Julieth. *See* Exhibit 1. His job immediately preceding his association with the instant trafficking organization was at a fish processing plant in Baranquilla. He was laid off from that job and was unemployed at the time he was approached by a former co-worker who promised to find him work as a mariner. His desire to support his family contributed to his poor decision to engage in the criminal activity charged here.

Specifically, in August of 2015, Mr. Barrios-Marsiglia agreed to assist in the loading and transportation of 959 kilograms of cocaine. Mr. Barrios-Marsiglia had no experience working as a mariner. His prospective employer agreed to pay for a "first mate" mariner's license for Mr. Barrios-Marsiglia.

Mr. Barrios-Marsiglia made one legitimate trip aboard the vessel at issue, *The Nathalia*, from Columbia to Panama. Upon arrival in Panama, problems with Mr. Barrios-Marsiglia's maritime paperwork were discovered and he was immediately flown back to Columbia. Because of the problem with the paperwork and the cost to fly back to Columbia, Mr. Barrios-Marsiglia was not paid. In fact, Mr. Barrios-Marsiglia was never paid during the time that he worked for the owners of the *Natalia*.

On August 27, 2015, the *Nathalia* was boarded by the United States Coast Guard. Upon search of the vessel, approximately 959 kilos of cocaine were recovered.

At the time Mr. Barrios-Marsiglia agreed to work aboard the *Nathalia*, he had little to no knowledge of the full scope and extent of the drug trafficking organization with whom he had agreed to assist as a maritime mule or courier. His job was simply to assist in the transport of the vessel and its secreted cargo of cocaine from one place to another. Mr. Barrios-Marsiglia did not own the cocaine; he did not have any financial stake in the cocaine; he had no knowledge of the total quantity of cocaine he was transporting; and he did not know to whom he was delivering the cocaine. He was nothing more than a drug courier who, in the big scheme of the larger drug trafficking organization, was promised only a small fraction of money in comparison to the

cocaine's worth.  Mr. Barrios-Marsiglia did not return from the trip and, thus, he never received any of the promised payment for his participation as a courier of the cocaine.

Mr. Barrios-Marsiglia has been cooperating with the United States government since his September 3, 2015, Indictment.  On December 8, 2015, he pleaded guilty pursuant to a written plea agreement which contained both a cooperation provision and a low-end guideline recommendation.  On December 9, 2015, this Court accepted Mr. Barrios-Marsiglia's guilty plea and adjudicated him guilty.  Mr. Barrios-Marsiglia has continued his cooperation and has met with government agents on no less than 4 occasions.

## GUIDELINE CALCULATIONS

At 46 years of age, Mr. Barrios-Marsiglia has no prior arrests, convictions, or juvenile adjudications and is, thus, properly scored as a criminal history category I offender.  Because the offense involved more than 450 kilograms of cocaine, Mr. Barrios-Marsiglia's base offense level, pursuant to U.S.S.G. §2D1.1(c)(1), is a level 38.  After a 2-level "safety value" reduction and a 3-level acceptance of responsibility reduction, Mr. Barrios-Marsiglia's total offense level is a level 33.  With a total offense level of 33 and a criminal history category of I, Mr. Barrios-Marsiglia's advisory guideline imprisonment range is 135 - 168 months (11 years, 3 months - 14 years) with a 10-year

minimum mandatory penalty. On March 4, 2016, the Government filed a "substantial assistance" motion, requesting a two-level reduction in the Defendant's guidelines, which eliminates the minimum mandatory penalty, and changes Mr. Barrios- Marsiglia's guideline range to 108 - 135 months (9 years - 11 years, 3 months) and further authorizes this Court to depart downward.

## REQUEST FOR A REASONABLE SENTENCE

It is respectfully suggested that, in light of the mitigating history and characteristics of Mr. Barrios-Marsiglia, as well as the facts and circumstances surrounding the non-violent nature of his offense, a sentence of 108 months is greater than necessary to accomplish the purposes of sentencing. It is respectfully submitted that a sentence not greater than 72 months, to be followed by a 5-year term of supervised release, will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. §3553(a). The history and circumstances of Mr. Barrios-Marsiglia, the facts and circumstances of his case, as well as his cooperative efforts would justify a downward variance. Mr. Barrios-Marsiglia is an impoverished, 46-year-old Columbian national who is a non-violent individual, with no prior criminal history or arrests and zero criminal history points. He is the sole financial support for his common law wife and 2 children.

Factually, Mr. Barrios-Marsiglia was approached by a former co-worker and given the opportunity to learn a new trade and make more money. Out of financial necessity, Mr. Barrios-Marsiglia seized this financial opportunity to better support himself and his family and ultimately agreed to transport cocaine aboard a ship that had previously been engaged in legitimate transportation of goods from Columbia to Panama. Ultimately, neither Mr. Barrios-Marsiglia nor his family ever received any money for his participation in the unlawful transportation of cocaine.

Notwithstanding the significant and serious nature of his offense, Mr. Barrios-Marsiglia's maritime drug-trafficking-courier offense was non-violent in nature and committed out of financial necessity. In the present case, Mr. Barrios-Marsiglia was nothing more than a maritime drug courier or mule with no decision-making authority; he did not recruit any accomplices; he had no claimed right to a larger share of the fruits of the crime; he had no involvement in planning the criminal activity; he had no knowledge or understanding of the scope and structure of the international drug trafficking enterprise; and he had no control over the activities of the others involved in the drug trafficking enterprise.

On more than one occasion, the Sentencing Commission has expressed its opinion that couriers and mules in larger drug trafficking organizations are

generally less culpable and deserving of sentencing mitigation.  Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G. §2D1.1 to provide that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under §3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. §2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640.  As such, if a defendant qualifies for either a minimal or minor role reduction, then the highest possible base offense level that the defendant may receive is a level 30.  The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .
> [ ] The amendment modifies §2D1(a)(3) to provide a maximum base offense level of level 30 if the defendant receives an adjustment under §3B1.2 (Mitigating Role). ***The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers" whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).***
>
> This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in §2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2.

U.S.S.G. Appx. C., Amend 640 (*emphasis added*).

Despite this 2002 amendment, as a result of Eleventh Circuit case law including but not limited, to *United States v. Rodriguez De Varon*, 175 F.3d 902 (11th Cir. 1999), defendants who are similarly situated like Mr. Barrios-Marsiglia have been consistently denied a mitigating role reduction despite the fact that they are low-level couriers or mules who *perform relatively low-level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability whose most serious trafficking function is transporting drugs*.

Additionally, in the November 1, 2015, edition of the guidelines, the Sentencing Commission again expressed its opinion that low-level couriers and mules whose sole function is the transportation of drugs are less culpable defendants entitled to sentencing leniency. Specifically, the Commission effective November 1, 2015, amended U.S.S.G. §3B1.2 and, in so doing, the Commission again recognized that defendants who participate in drug trafficking offenses, "whose participation in that offense was limited to transporting or storing drugs," are generally less culpable, warranting a role reduction in their sentence. U.S.S.G. §3B1.2, App. N. 3(A). Additionally, the Commission recognized that drug trafficking defendants who have a lesser understanding of the scope and structure of the criminal activity; are not

involved in the planning or organizing of the criminal activity; do not have decision-making authority; are not due to benefit substantially from their criminal activity; and who are simply being paid to perform certain task(s) are typically less culpable and should receive a mitigation of their sentence. U.S.S.G. §3B1.2 App. N. 3(C). Despite this Amendment and its stated purpose of attempting to increase the number of mitigating role reductions for less culpable defendants such as couriers and mules, several courts within this district have still found that individuals such as Mr. Barrios-Marsiglia do not qualify for a mitigating role and corresponding §2D1.1(a)(5) reduction.[1] While Mr. Barrios-Marsiglia may not be eligible for such mitigating role reduction because he is equally culpable as the other co-defendants on their vessel, such lower level couriers and mules are not ineligible for a downward variance based on their lesser roles in the larger drug trafficking conspiracy.

---

[1] The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application varies widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments. Based on this study's findings, the Commission's clarifying amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *See* U.S.S.G Appendix C, amendment 783, Nov. 1, 2014.

In the present case, Mr. Barrios-Marsiglia performed nothing more than a *low level trafficking function, he had little authority in the drug trafficking organization, and he had a lower degree of individual culpability (e.g., he was a "mule" or "courier") and his most serious trafficking function was transporting drugs*.  As such, while Mr. Barrios-Marsiglia may not qualify for a minor role reduction under the guidelines, the fact that he performed nothing more than a low-level trafficking function in a larger drug trafficking organization and was at or near the bottom of the international drug trafficking hierarchy would provide justification for a downward variance.  As such, Mr. Barrios-Marsiglia's role as nothing more than a low-level maritime drug courier or mule coupled with his history and characteristics, his cooperative efforts as well as his perceived financial necessity as his motivating factor in becoming involved in his present offense would all justify a downward variance below his present low-end 108 month advisory guideline imprisonment range.

It is respectfully submitted that a sentence of 72 months followed by a 5-year term of supervised release will appropriately deter Mr. Barrios-Marsiglia from re-offending in the future and will further provide general deterrence to others.  Mr. Barrios-Marsiglia has no prior criminal history and the sentence imposed by this Court will constitute the first time in his life he has ever been incarcerated.  He will be incarcerated an ocean away from his family and

friends, thus making his term of incarceration more onerous than the average defendant who appears before this Court for sentencing. In fact, recent studies have found that for first time offenders, the length of incarceration has no effect on future re-offending.[2.]

Finally, a sentence of 72 months will adequately reflect Mr. Barrios-Marsiglia's role as a low-level maritime drug trafficking courier and it will promote respect for the law; it will provide just punishment for the offense and it will illustrate that the law has appropriately considered Mr. Barrios-Marsiglia as an individual and has appropriately taken into consideration his unique human failings which mitigate his crime and his punishment. Additionally, such a sentence will send a strong message to individuals in other countries that even first-time offending, low-level drug trafficking couriers and mules will receive a significant term of incarceration.

WHEREFORE, the Defendant, EUCLIDES BARRIOS-MARSIGLIA, respectfully moves this Honorable Court to grant the Government's U.S.S.G. §5K1.1 motion and to further vary, pursuant to 18 U.S.C. §3553(a), below his low-end advisory imprisonment range of 108 months and to impose a total

---

[2]*See The Effects of Imprisonment: Specific Deterrence and Collateral Effects,* Center For Criminology & Social Studies, Feb. 14, 2014 at p. 4 "The length of time an offender spends in prison on the first prison sentence has no discernible impact on the likelihood that he or she will reoffend. . . . For those who are imprisoned for the first time, the length of time in prison appears to be irrelevant to future offending. [ ] This data, however, suggest that judges when sentencing an offender to a first prison sentence should not vary the sentence length because of a belief the sentence length affects reoffending."

sentence of 72 months of incarceration to be followed by a 5-year term of supervised release.

DATED this 11th day of March 2016.

Respectfully submitted,

/s/ Lisa B. McLean
Lisa B. McLean, P.A.
Florida Bar No.0883700
3802 West Bay to Bay Boulevard
Suite 12
Tampa, Florida 33629
Telephone: (813) 229-5343
Facsimile: (813) 229-47
Email: lisa@mcleanlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of March 2016, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to:

AUSA Maria Chapa Lopez.

/s/ Lisa B. McLean
Lisa B. McLean

Exhibit 1

# Lisa McLean

**From:** Nubis Nuñez Navarro <███████████>
**Sent:** Tuesday, November 17, 2015 4:38 PM
**To:** lisa@mcleanlegal.com
**Subject:** euclides #████



**From:** Nubis Nuñez Navarro <█████████████>
**Sent:** Tuesday, November 17, 2015 4:41 PM
**To:** lisa@mcleanlegal.com
**Subject:** eucline #█████████

 

ORGANIZACIÓN CLÍNICA GENERAL DEL NORTE
*Un Compromiso con la Vida*

NIL 890.102.768-0

### DEPARTAMENTO DE HEMODINAMIA

FECHA: 02 DE MARZO DE 2015
PACIENTE: NUBYS NUÑEZ NAVARRO - 4233

### PANANGIOGRAFIA CEREBRAL

Previa asepsia a regiones inguinales, colocación de campos estériles, anestesia local, se punciona arteria femoral derecha y se instala introductor vascular 5F. Se pasa catéter H1 5F sobre guía hidrofílica 0.035 y se explora selectivamente las arterias carótidas internas y el sistema vertebrobasilar a través de la arteria vertebral izquierda con los siguientes hallazgos:

Paciente ya conocida a quien se le había instalado stent leo previamente por presentar dilatación fusiforme bilateral del segmento supraclinoideo de ambas arterias carótidas. Hay mayor compromiso de la carótida derecha, donde se le instaló el stent previamente. Este estudio se realiza como control para completar tratamiento endovascular.

Se evidencia la presencia de stent leo instalado entre el segmento supraclinoideo de la carótida interna derecha y la arteria cerebral media derecha en el segmento M1, el cual se encuentra desplegado, permeable, persistiendo la opacificación de la dilatación fusiforme del segmento supraclinoideo de la carótida interna derecha. Consideramos que a la paciente se le debe completar el tratamiento, programándose nuevamente para la implantación de stent redireccionador de flujo (silk).

En la carótida izquierda persiste la dilatación del segmento supraclinoideo en forma de espejo, pero con menor compromiso que en el lado derecho. La arteria cerebral media, cerebral anterior, arteria oftálmica, coroide anterior y comunicante posterior de este lado son normales.

El sistema vertebrobasilar normal.

CONCLUSIÓN:

1. DILATACIÓN FUSIFORME DEL SEGMENTO SUPRACLINOIDEO DE AMBAS ARTERIAS CAROTIDAS INTERNAS A QUIEN SE LE INSTALO PREVIAMENTE STENT LEO EN EL SEGMENTO DILATADO DE LA CAROTIDA INTERNA DERECHA. SE REQUIERE COMPLEMENTAR TRATAMIENTO MEDIANTE LA COLOCACIÓN DE STENT REDIRECCIONADOR DE FLUJO TIPO SILK, POR TANTO SE INDICA PROGRAMAR PARA NUEVO PROCEDIMIENTO.
2. PERSISTE DILATACIÓN FUSIFORME DEL SEGMENTO SUPRACLINOIDEO DE LA CAROTIDA IZQUIERDA, QUE POR EL MOMENTO SOLO REQUIERE DE MANEJO MÉDICO.

DR. BORIS BOPAIN MATIZ
MD. RADIOLOGO.
RM No. 1609

Cra. 46 No 70 - 38  PBX: 3564455 Ext.:1215 Fax: 3582160
cgeneral@clinicageneraldelnorte.com
Barranquilla - Colombia

| | |
|---|---|
| **From:** | Nubis Nuñez Navarro <​███████████████​> |
| **Sent:** | Tuesday, November 17, 2015 4:43 PM |
| **To:** | lisa@mcleanlegal.com |
| **Subject:** | euclines # ███████ |

**Clínica** ❤ **EVOLUCION MEDICA**
D.M. FORMA 018

NIT.: 800129694-5

Entidad: Nueva EPS

Paciente: Nuby Nuñez Navarro (Irma Reparar Matriz)

Médico:

HOJA No.

CAMA No.

Paciente femenina de 48 años, con historia de dilatación fusiforme del segmento supraclinoideo de ambas carótidas internas, de predominio derecho donde se inicia tratamiento con implantación de stent Leo, si requiere completar tratamiento con stent re-direccionador de flujo (stent Silk). La paciente requiere continuar tratamiento con antiagregación plaquetaria dosel con clopidogrel y ASA y solicitar reserva de cama en UCI para el postoperatorio inmediato.

